IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JONATHAN JADIEL MARTINEZ DONA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. **3:17-CV-2469-L** |
| | § | |
| PATRICIA CAROLINA PEREZ CASTILBLANCO, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Petitioner Jonathan Jadiel Martinez Dona's ("Petitioner") Motion Under the Hague Convention for Entry of a Temporary Restraining Order and Scheduling of an Expedited Hearing (Doc. 17), filed February 13, 2018. After considering the motion, pleadings, and applicable law, the court **denies** Petitioner's Motion Under the Hague Convention for Entry of a Temporary Restraining Order and Scheduling of an Expedited Hearing (Doc. 17).

**I. Factual and Procedural Background**

This case involves the alleged wrongful removal or retention of a child under the Hague Convention on the Civil Aspects of International Child Abduction ("Convention"), Oct. 25, 1980, T.I.A.S. No. 11670, S. Treaty Doc., No. 99-11, which is implemented in the United States through the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9003 *et seq*. Petitioner brought this action on September 14, 2017, requesting that the court order the return of his three-year old biological son J.S.M.P. to his alleged "habitual residence" of San Antonio de Coronado, Costa Rica. In addition, Petitioner requests: (1) "for the well-being of the child, that he be given immediate

access to his child, pending further hearing in this Court"; (2) that the court issue an order immediately prohibiting the removal of J.S.M.P. from the jurisdiction and requiring the turnover of the child's travel documents; and (3) that the court set the matter for an expedited hearing. Pet. ¶¶ 5.10-5.3.

In support of his Petition for Return of the Child to Petitioner ("Petition") (Doc. 1), Petitioner submitted a copy of the Convention; a portion of the Spanish version of Costa Rica's Family Code or Código de Familia; an unsworn affidavit by Petitioner, which constitutes no evidence; correspondence dated January 6, 2017 from the Patronato Nacional De La Infancia; and a "Formulario de denuncia" or "denunciation form" dated September 6, 2016, that Petitioner filed with the Patronato Nacional De La Infancia in Costa Rica. Petitioner alleges that Respondent, the biological mother of J.S.M.P, removed the child to the United States without Petitioner's consent. Petitioner does not allege in his Petition or state in his affidavit whether he and Respondent are married, but it is apparent from the documents relied on by him they are not married. The parties' pleadings and the documentation submitted by Petitioner also show that Petitioner, Respondent, and J.S.M.P. were all born in Honduras; that Petitioner, Respondent, and J.S.M.P. were residing in Costa Rica immediately before J.S.M.P.'s removal; that Petitioner's country of habitual residence is Costa Rica; and Respondent's country of habitual residence is the United States.

Petitioner alleges that Respondent wrongfully removed the child without his consent from Costa Rica to the United States on February 27, 2016, in violation of the Convention. Petitioner alleges that Respondent has continued to wrongfully retain the child in the United States, and he believes the child is presently living with his mother in Dallas, Texas, at his maternal grandmother's residence. Petitioner contends that he has rights of custody under Costa Rican law (Articles 141,

151, and 157 of Costa Rica's Código de Familia or Family Code); that he was exercising those custody rights before the child was wrongfully removed; and that return of the child to Costa Rica is required under Articles Three and Five of the Convention.

After filing this action, Petitioner, who is represented by counsel, filed an application to proceed *in forma pauperis* ("IFP"), which was granted by the magistrate judge on September 22, 2017. On November 27, 2017, the magistrate judge ordered the clerk of the court to issue and serve a summons on Respondent within thirty days and return the case for further action to the district court. Service was effected as to Respondent on December 12, 2017.

On January 2, 2018, Respondent filed her pro se Answer to the Petition, denying Petitioner's allegations and contending that this action is baseless and frivolous:

> **Denial of Allegations.**
>
> Respondent enters a general denial.
>
> [Petitioner] has no bas[is] to file this suit. Respondent has suffered greatly under the hard rule of this man. Such, to the point that she had to get an order of protection from the local authorities for the innumerable attacks that he made upon Respondent. Enclosed is a copy with a general translation, as Respondent could not obtain a word by word translation, as it is cost-prohibitive.
>
> Petitioner[] is making a baseless frivolous accusation with the intention of hurting Respondent[] because she left him. Since he found out where his child lives, he has not made any attempts to provide for his care and upkeep. He never provided for him while they lived in Costa Rica or Honduras for that matter. He has never cared for this child on his own. More than likely, it could be said, that the child does not know him. When they lived in Costa Rica[,] [Respondent] never received any help for their child. She also never received any help while she was pregnant. Since the child was born, [Respondent] has constantly depended on her own mother, who lived in Dallas, Texas[,] for any financial help or assistance.
>
> Additionally[,] Respondent now requests . . . that [Petitioner] be made to pay for the care and support of his child. Perhaps that since he is now in this country, he should be made aware that a child needs care and food and not just a demand for

possession. [Petitioner] has never paid a dollar for his support, and now I insist that he become responsible for this child.

Answer 1-2. Both parties request an award of attorney's fees and costs.

On February 13, 2018, Petitioner moved for a temporary restraining order ("TRO"). In his motion for a TRO, Petitioner requests that the court prohibit Respondent, and others acting on her behalf, from removing J.S.M.P. from the court's jurisdiction until after a determination has been made regarding the merits of his Petition. Petitioner contends that ICARA empowers a district court to take appropriate steps "to protect the well-being of the child involved or to prevent the child's further removal or concealment before final disposition of the petition," and the injunctive relief requested by him "is necessary to prevent irreparable harm to [him] and to preserve the status quo." TRO Mot. 1 (citing 22 U.S.C. § 9004(a)). Petitioner further requests that the court expedite the briefing on his request for a TRO and all other motions; schedule an immediate hearing on the motion for TRO; set a hearing on the merits of his Petition; and order Respondent to show cause at a hearing why his Petition should not be granted. In addition, Petitioner appears to request, pursuant to Federal Rule of Civil Procedure 65, that any preliminary injunction hearing be consolidated with the hearing on his Petition.

## II. Standard for Preliminary Injunction and TRO

Under federal law, there are four prerequisites for the extraordinary relief of preliminary injunction or temporary restraining order. A court may grant such relief only when the movant establishes that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the

> granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the temporary restraining order or preliminary injunction. Because a TRO is considered an "extraordinary and drastic remedy," it is not granted routinely, "but only when the movant, by a clear showing, carries the burden of persuasion." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985).

## III. Law Applicable to Petitions for Return of Children

The Convention was adopted to address the problem of international child abductions in connection with domestic disputes. *Abbott v. Abbott*, 560 U.S. 1, 8 (2010). The purpose of the Convention is to "to secure the prompt return of children wrongfully removed to or retained in any Contracting State," and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." *Id.* (quoting Convention, art. 1). Under the Convention, a child who is abducted in violation of the "rights of custody" must be returned to the child's country of habitual residence, unless certain exceptions apply." *Abbott*, 560 U.S. at 5.

The Convention is implemented through the ICARA. *Id.* Under the ICARA, state courts and federal district courts have concurrent original jurisdiction over actions arising under the Convention. 22 U.S.C. § 9003(a). A person, who seeks the return of a child wrongfully removed or retained may

**Memorandum Opinion and Order - Page 5**

file a petition for relief "in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed."*Id.* § 9003(b). Although Respondent disputes Petitioner's entitlement to custody and return of J.S.M.P., she does not expressly dispute that the child was not located in Dallas County, Texas, when the Petition in this case was filed, and she acknowledges that her current address is 10637 Coogan Dr., Dallas, Texas, 75229. For this reason and because Costa Rica and the United States are both signatories to the Convention, the court determines that it has jurisdiction over this action. *See Sealed Appellant v. Sealed Appellee*, 394 F.3d 338, 342 (5th Cir. 2004). The Federal Rules of Evidence apply to wrongful removal and retention cases brought under the Convention. *Vazquez v. Vasquez*, No. 3:13-CV-1445-B, 2013 WL 7045041, at *1 n.1 (N.D. Tex. Aug. 27, 2013) (citing cases). Authentication requirements, however, are relaxed. *See* 22 U.S.C. § 9005.

When a child less than sixteen years of age has been wrongfully removed or retained and less than one year has elapsed between the alleged wrongful removal or retention and the commencement of return proceedings, the court in the country to which the child has been brought must "order the return of the child forthwith," if the petitioner establishes that the removal or retention was wrongful and none of the Convention's exceptions apply. *Abbott*, 560 U.S. at 9; 51 Fed. Reg. at 10507. Even when return proceedings are initiated after the expiration of one year, Article 12 of the Convention requires return of the child unless it is shown that the child is settled in his or her new environment. *Id.*

To establish a claim for wrongful removal or retention under the Convention, the petitioner must establish by a preponderance of the evidence the following three elements: (1) that "the respondent removed or retained the child somewhere other than the child's habitual residence"; (2)

**Memorandum Opinion and Order - Page 6**

that the removal or retention was wrongful in violation of the petitioner's custody rights; and (3) "at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention." *Larbie v. Larbie*, 690 F.3d 295, 307 (5th Cir. 2012). A parent's removal or retention of a child is considered wrongful "when he or she removes or retains the child outside the child's country of habitual residence, and this removal: breaches the rights of custody accorded to the other parent under the laws of that country; and, at the time of removal, the non-removing parent was exercising those custody rights." *Sealed Appellant*, 394 F.3d at 343 (citing Convention, art. 3). "[R]ights of custody" are "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." *Abbott*, 560 U.S. at 9 (quoting Convention, art. 5(a)). The phrase "place of residence" encompasses the child's country of residence. *Abbott*, 560 U.S. at 9. The right to choose the child's country of residence is a right "relating to the care of the person of the child." *Id*. "A return remedy does not alter the pre-abduction allocation of custody rights but leaves custodial decisions to the courts of the country of habitual residence. *Id.* (citation omitted). "The Convention also recognizes 'rights of access,' but offers no return remedy for a breach of those rights." *Id.*

Pursuant to Article 3 of the Convention, rights of custody may arise from operation of law, from a judicial or administrative decision, or from a legally binding agreement. Convention, art. 3. When no formal custody agreement exists between the child's parents, courts must apply the laws of the country of the child's habitual residence to determine whether the nonremoving parent had "rights of custody" within the meaning of the Convention. *Sealed Appellant*, 394 F.3d at 343. Here, Petitioner acknowledges that no formal custody agreement existed at the time of J.S.M.P.'s removal.

The court, therefore, applies the laws of J.S.M.P.'s habitual residence to determine whether Petitioner had rights of custody under the Convention. The Convention's return remedy does not change custody rights that existed prior to the wrongful removal of a child and is not a determination regarding the merits of any custody issue. *Abbott,* 560 U.S. at 9 (citing Convention, art. 19).

Neither the Convention nor ICARA defines "habitual residence." *See Larbie*, 690 F.3d at 310. "The inquiry into a child's habitual residence is not formulaic; rather it is a fact-intensive determination that necessarily varies with the circumstances of each case." *Id.* (citation omitted). The Fifth Circuit follows an approach that "begins with the parents' shared intent or settled purpose regarding their child's residence." *Id.* (citation omitted). "A shared parental intent requires that the parents actually share or jointly develop the intention. In other words, the parents must reach some sort of meeting of the minds regarding their child's habitual residence, so that they are making the decision together." *Berezowsky v. Ojeda*, 765 F.3d 456, 468 (5th Cir. 2014) (citing *Larbie*, 690 F.3d at 310). This approach "gives greater weight to the parents' subjective intentions relative to the child's age" than the child's experience, particularly when the child is so young that "he or she cannot possibly decide the issue of residency." *Id.* (citation omitted). Under this approach:

> the threshold test is whether both parents intended for the child to abandon the [habitual residence] left behind. Absent shared intent, prior habitual residence should be deemed supplanted only where the objective facts point unequivocally to this conclusion. Notably, when the child's initial move from an established habitual will find no change in habitual residence. Mere retention in another country and "private reservations" or intentions that are made "manifest and definitive" only after the child has left its country of origin are generally insufficient to establish intent to change a child's habitual residence.

*Id.* at 310-11 (internal quotations and citations omitted).

If the petitioner shows by a preponderance of the evidence that the removal or the retention of the child was wrongful, the burden shifts to the respondent to prove an applicable affirmative defense. *See* 22 U.S.C. § 9003(e)(1). Even if the child has been wrongfully removed, return is not required if the removing parent can establish that an exception under the Convention applies. *Abbott*, 560 U.S. at 22. The Convention recognizes several narrow affirmative defenses if a respondent "opposes the return of the child." Convention, arts. 12, 13, 20; 22 U.S.C. § 9003(e)(2). A respondent may show by clear and convincing evidence[1] that there is a "grave risk that [the child's] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Convention, art. 13(b); 22 U.S.C. § 9003(e)(2)(A). The level of harm necessary to trigger the Article 13(b) exception must be "a great deal more than minimal." *Sanchez v. R.G.L.*, 761 F.3d 495, 510 (5th Cir. 2014) (citation omitted).[2] A respondent may show by clear and convincing

---

[1] Civil cases are typically decided by a preponderance of the evidence. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 387-88 (1983). Proving a fact by a "preponderance of the evidence" means showing that the existence of a fact is more likely than not. *Id.* at 390. Thus, to prove a fact or claim by a preponderance of the evidence, a party must prove that it is more likely than not that his or her version of the facts is true. *Id.* The "clear and convincing evidence standard" is a high standard that is "higher than the preponderance of the evidence standard, common in civil cases, but not as high as beyond a reasonable doubt." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (citation and internal quotation marks omitted); *Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001). "Clear and convincing evidence" means evidence "so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy." *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 395, n.9 (5th Cir. 2004) (quoting *Travelhost, Inc.*, 68 F.3d at 961) (internal quotation marks omitted).

[2] The grave risk defense "was not intended to be used by defendants as a vehicle to litigate (or relitigate) the child's best interests"; nor was it intended to encompass situations such as the return to a home where money is in short supply or where educational opportunities are more limited." Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10494, 10510 (March 26, 1986). It instead was intended to apply to situations where the risk to the child is "grave, not merely serious." *Id.* An example of such a situation is one involving sexual abuse of a child by a custodial parent. *Id.* A grave risk or intolerable situation also exists when returning a child would send him or her "to a zone of war, famine, or disease, or in cases of serious abuse or neglect." *Vazquez v. Estrada*, No. 3:10-CV-2519-BF, 2011 WL 196164, *5 (N.D. Tex. Jan. 19, 2011) (finding no grave risk exception despite evidence of "spiraling [drug cartel] violence and surge in murders in Monterrey" and evidence of "specific violent acts that have been committed in the school [that the child] attended in Monterrey and in the neighborhood where Petitioner resides."). "Evidence of adjustment problems attending relocation and separation from a parent are inapposite to the grave risk determination." *Castro v. Martinez*, 872 F. Supp. 2d 546 (W.D. Tex. Feb. 2, 2012). Evidence of prior abuse is insufficient, especially when there is conflicting testimony about the alleged abuse. *Edoho v. Edoho*, No. H-10-1881, 2010 WL 3257480, at *5 (S.D. Tex. Aug. 17, 2010).

evidence that the return of the child "would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms." Convention, art. 20; 22 U.S.C. § 9003(e)(2)(A).

Pursuant to Article 12 of the Convention, if the petition is filed more than one year after the removal, the respondent may argue that the child is now "well-settled" in his or her new environment. Convention, art. 12; 22 U.S.C. § 9003(e)(2)(B). This defense must be established by a preponderance of the evidence. *Id.* It is also a defense to wrongful removal if a respondent can show by a preponderance of the evidence that the petitioner was "not actually exercising the custody rights at the time of removal or retention," or that the petitioner "had consented to or subsequently acquiesced in the removal or retention." Convention, art. 13(a); 22 U.S.C. § 9003(e)(2)(B). The Convention also provides that "[t]he judicial or administrative authority [considering a petition] may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Convention, art. 13. The age and maturity exception is construed narrowly and must be shown by a preponderance of the evidence. *England v. England*, 234 F.3d 268, 272 (5th Cir. 2000).

Section 9004(a) of ICARA relied on by Petitioner in support of his request for a TRO provides:

> In furtherance of the objectives of . . . the Convention, . . ., any court exercising jurisdiction of an action brought under [] section 9003(b) of this title may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition.

22 U.S.C. § 9004(a).[3]

---

[3] 22 U.S.C. § 9003(b), which is referenced in section 9004(a), applies to petitions for the return of a child and provides as follows:

**IV.     Analysis**

Petitioner does not contend that ICARA's section 9004(a) relieves him of his burden under federal law to show that all four requirements for a TRO are satisfied, and the court does not construe section 9004(a) as altering his burden as the party seeking a TRO.  Moreover, the court determines that Petitioner has not established that all requirements for a TRO have been met despite his assertion to the contrary.

**A.     Substantial Likelihood of Prevailing on the Merits**

Regarding the first requirement, whether there is a substantial likelihood that the movant will prevail on the merits, the court determines that there is no evidence to support Petitioner's conclusory allegations that: (1) J.S.M.P.'s habitual residence before removal to the United States was Costa Rica; (2) Petitioner has custody rights under Costa Rican law; and (3) Petitioner was exercising those rights before J.S.M.P.'s removal to the United States.  The conclusory statement in the Petition and Petitioner's affidavit that J.S.M.P. has lived with Petitioner in Costa Rica since his birth until his removal are insufficient to establish that Petitioner and Respondent had a shared intent or settled purpose to make Costa Rica J.S.M.P.'s habitual residence. *Larbie*, 690 F.3d at 310. First, this statement conflicts with another statement in Petitioner's affidavit that J.S.M.P. was born in Honduras.  If the child was born in Honduras, he could have lived his entire life in Costa Rica, and Petitioner does not specify how long J.S.M.P. has resided in Costa Rica.  Thus, at most, this

---

In furtherance of the objectives of article 7(b) and other provisions of the Convention, and subject to the provisions of subsection (b) of this section, any court exercising jurisdiction of an action brought under section section 9003(b) of this title may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition.

statement by Petitioner indicates only that, for some unspecified period of time, J.S.M.P. lived with Petitioner in Costa Rica, before the child was removed by his mother to the United States.

Moreover, that J.S.M.P. may have lived for a length of time in Costa Rica with Petitioner must be viewed in light of other facts. Specifically, as noted, the parties' allegations and the documentation submitted by Petitioner indicate that Petitioner, Respondent, and J.S.M.P. were all born in Honduras and lived in Honduras for a time before they moved to Costa Rica; Respondent has immediate family in Dallas, Texas; and Petitioner acknowledges that Respondent's country of habitual residence is the United States. Taken together, these facts do not support a finding that J.S.M.P.'s habitual residence was Costa Rica at the time of his removal to the United States.

Further, even assuming, as Petitioner contends, that Costa Rica was J.S.M.P.'s habitual residence prior to his removal and Costa Rican law applies to determine Petitioner's rights of custody, Petitioner has not established that J.S.M.P.'s removal or retention breached Petitioner's custody rights under Costa Rican law. The Convention defines 'rights of custody' as including "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Convention, art. 5. Petitioner alleges in his Petition and affidavit that Articles 141, 151, and 157 of Costa Rica's Código de Familia provide him with rights of custody and offers the following English translation of Convention Articles 141, 151, and 157:

> Article 141: The rights and obligations inherent to parental authority cannot be renounced. Neither can they be modified by agreement of the parties as they relate to the custody, upbringing, and education of the children, except for the provisions for separation and divorce by mutual consent.
>
> Article 151: The father and mother exercise parental authority over the children with equal rights and duties in the marriage relationship. In the event of a disagreement, at the request of either parent, the Court shall make the decision, even without the

formalities of process and without the need for the parties' hiring lawyers. The Court must decide based on the child's interest. . . .

Article 157: The provisions of Article 151 shall apply when the mother of a child born out of marriage exercised parental authority together with the father.

Pet. ¶ 3.1.

Article 14 of the Convention authorizes the court to take judicial notice of the law of the country of the child's habitual residence without following standard procedures for the proof of foreign law. Convention, art. 14. Even if the court takes judicial notice of Costa Rican law and accepts the translation offered by Petitioner, who does not appear to have any legal experience, Petitioner offers no explanation as to why he believes Articles 141, 151, and 157 of Costa Rica's Código de Familia provide him with rights of custody under Costa Rican law.[4] Article 141 appears in Chapter I of the Costa Rican Family Code includes general rules of disposition applicable to the rights and obligations conferred by parenthood. Código de Familia [CDF], art. 141 (Costa Rica). Article 151 appears in Chapter II of the Costa Rican Family Code and applies specifically to the rights of parents when a child is born in wedlock. *Id.* art. 151. The court interprets these provisions as setting forth the general rule in Costa Rican law that provides a joint or equal right of custody to both parents when a child is born in wedlock. *See Fernandez v. Somaru*, No. 2:12-CV-262-FtM-29DNF, 2012 WL 3553779, at *7 n.5 (M.D. Fl. Aug. 17, 2012) ("In the event that a child is born in wedlock, Costa Rican law generally provides for custody of both the mother and the father."). Article 157, which appears in Chapter III of the Family Code, applies to children like J.S.M.P, who were

---

[4] The court obtained an unofficial English translation of the Costa Rican Family Code relied on by Petitioner that corresponds to the Spanish version submitted by Petitioner and comports with the translation offered by him. Pursuant to article 14 of the Convention, the court takes judicial notice of Costa Rican law as set forth in the English version of the Costa Rican Family Code obtained by the court.

born outside of marriage, and only provides for joint or equal rights of custody to both parents *if* the mother exercised parental authority together with the father. CDF, art. 157. According to Article 155,[5] which also appears in Chapter III of the Costa Rican Family Code, when a child is born outside of marriage, the mother, even if she is a minor, has the right to exercise parental authority over a child born outside of marriage and has full legal status for these purposes. CDF, art. 155. The father, on the other hand, only has the right to exercise parental authority together with the mother in special cases, if such authority is conferred by a tribunal or court upon request of a party or the Patronato Nacional de la Infancia and done solely in consideration of the child's interests. *Id.* In *Fernandez v. Somaru*, an ICARA case, the court reached the same conclusion based on expert testimony and an official translation of Costa Rican law regarding parental custody:

> Costa Rican law provides, [in the event a child is born out of wedlock], that,
>
> [t]he mother, even when she is under age, shall have custody of the children born out of wedlock and shall have legal rights for that purpose. The Tribunal could, in special cases, confer custody to the father and natural mother jointly, according to its judgement, or upon request from Patronato Nacional de la Infancia and concerning solely the minors' interests.

---

[5] The Spanish and English versions of Article 155 are as follows:

Artículo 155 : La madre, aún cuando fuere menor, ejercerá la patria potestad sobre los hijos habidos fuera del matrimonio y de la plena persona jurídica para esos efectos.

El Tribunal puede, en casos especiales, un juicio suyo, una petición de parte o del Patronato Nacional de la Infancia y atención al público de los menores, conferir la patria potestad al padre conjuntos con la madre.

Article 155 : The mother, even when she is a minor, will exercise parental authority over the children born outside of marriage and will have full legal status for these purposes.

The Court may, in special cases, at its own discretion, at the request of a party or the National Board of the Childhood and exclusively attending to the interests of minors, confer parental authority to the father together with the mother.

2012 WL 3553779, at *7 (footnote omitted). Because there was no evidence in *Fernandez v. Somaru* of a custody agreement or that the Patronato Nacional de la Infancia had granted joint custody of the child to the mother and father, the court concluded that custody was conferred to the mother under Costa Rican law and ordered the return of the child to the mother. *Id.*

The court similarly concludes that Petitioner does not share rights of custody under Costa Rican law with Respondent with respect to J.S.M.P. because he does not allege and has not established that: (1) the parties had a legally binding agreement to share custody of J.S.M.P; or (2) the Patronato Nacional de la Infancia has conferred him with rights of joint custody as to J.S.M.P. As a result, Petitioner could not have been exercising his alleged rights of custody together with J.S.M.P.'s mother when the child was removed from Costa Rica by his mother, and the removal was not wrongful. Thus, even assuming that the Petition for J.S.M.P.'s return is not subject to a well-settled defense by Respondent as a result of Petitioner's allegations regarding the reasons for his delay in filing his Petition more than one year after J.S.M.P.'s removal, Petitioner has not shown a substantial likelihood that he will be able to succeed on the merits of his Petition under the Convention, ICARA, and applicable law, which require a showing that J.S.M.P.'s removal from Costa Rica was wrongful.[6]

---

[6] In making this determination, the court gives little or no weight to the unsupported, conclusory statements in the Petition and Petitioner's affidavit. Petitioner's Petition is not verified, and, while he submitted an affidavit in support of his Petition, the affidavit is not sworn to under penalty of perjury and merely states that it is made on "the best of my knowledge and belief." Affid. 1, 3 (Doc. 1-3). "[A]t the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence. Thus, the district court can accept evidence in the form of deposition transcripts and affidavits." *Sierra Club, Lone Star Chapter v. F.D.I.C*, 992 F.2d 545, 551 (5th Cir. 1993) (citations omitted). Despite this relaxed standard, "courts have shown appropriate reluctance to issue such orders whe[n] the moving party substantiates his side of a factual dispute on information and belief," particularly when, as here, the facts are disputed and Petitioner's statements and allegations are conclusory. *Marshall Durbin Farms, Inc. v. National Farmers Org., Inc*., 446 F.2d 353, 357 (5th Cir. 1971). Thus, while the court can consider Petitioner's affidavit, the unsupported and conclusory statments in the affidavit regarding J.S.M.P.'s habitual residence, Petitioner's custody rights, and his exercise of those rights will not support issuance of

### B. Irreparable Harm

As noted, Petitioner requests that the court preclude Respondent from removing J.S.M.P. from the jurisdiction pending a hearing and ruling on his Petition and contends that he will suffer irreparable harm if the child is removed from the jurisdiction. The court disagrees.

While petitions brought under the Convention are normally handled on an expedited basis, and the Convention allows a court to take measures under federal or state law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition, there is no indication in this case that J.S.M.P. is at risk of harm or will be removed from the jurisdiction prior to the court ruling on the Petition. Petitioner alleges and Respondent's Answer confirms that the child has been residing with his mother at his maternal grandmother's residence in Dallas, Texas, since being removed. Respondent's filing of an Answer to the Petition indicates an intent by her to comply with any ruling by the court rather than an intent to flee the jurisdiction with J.S.M.P. Moreover, as noted, the court determines that the requested injunctive relief and expedited consideration are not appropriate because it does not appear at this juncture that Petitioner will be able to prevail on the merits of his Petition.

## V. Conclusion

For the reasons stated, the court **denies** Petitioner's Motion Under the Hague Convention for Entry of a Temporary Restraining Order and Scheduling of an Expedited Hearing (Doc. 17). Because the Petition for Return of the Child to Petitioner, as currently pleaded, is insufficient to state a claim for relief under the Convention or ICARA, and it does not appear that the deficiencies noted

---

a TRO. *See id.*

regarding Petitioner's rights of custody under Costa Rican law can be cured, the court will require Petitioner to amend his petition before setting the matter for an evidentiary hearing. Accordingly, the court **orders** Petitioner to file an amended petition that cures the deficiencies noted in this opinion by **February 26, 2018.** *The amended petition shall include factual allegations and set forth more than labels and conclusions, and a formulaic recitation of the matters for which Petitioner has the burden of proof. Failure of Petitioner to file an amended petition as directed will result in dismissal without prejudice of this action under Federal Rule of Civil Procedure 41(b) for failure to prosecute or comply with a court order or dismissal with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.* Any answer by Respondent to the amended petition must be filed within **14 days** after service of the amended complaint.

After an amended petition is filed by Petitioner, the court will schedule an evidentiary hearing for a date in April 2018. Because of the court's busy criminal docket, April 2018 is the earliest time that the court can conduct a hearing. If the parties have any conflicts that would prevent their attending a hearing on the Petition on any date in April 2018, they must notify the court in writing of such conflict by **March 2, 2018.** Further, if the parties wish to have an evidentiary hearing on the amended petition before April 2018, they may consent to proceed before the assigned magistrate judge by completing the form to Consent to Proceed Before a United States Magistrate Judge (Doc. 2). Both parties' consent is necessary to proceed before the magistrate judge.

**It is so ordered** this 16th day of February, 2018.

Sam A. Lindsay
United States District Judge